IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 10-10178-01-WEB |
| | ) | |
| THOMAS RAY BLUBAUGH, | ) | |
| | ) | |
| Defendant. | ) | |

## Memorandum and Order

The defendant Thomas Blubaugh came before the court for sentencing on April 11, 2011. At that hearing the court orally addressed the parties' objections and arguments. This written memorandum, in accordance with Fed.R.Crim.P. 32(i)(3)(B), will supplement the court's oral rulings.

The Government filed one objection to the Presentence Report. It objects to the finding in paragraph 61 that the amount of loss for purposes of determining the offense level was between $400,000 and $1 million. The Government argues the loss exceeded $1 million. Neither party had any evidence to submit at the sentencing hearing relating to the objection.

The PSR finds that Mr. Blubaugh is directly responsible for $841,111 obtained by he and his wife from ticket sales. PSR, ¶61.[1] The Government argues the offense level should also take

---

[1] The additional $268,292 "tax loss" resulting from the Blubaughs' failure to pay income tax on the money they received from ticket sales was not included in the 2B1.1 loss calculation. Rather, the PSR considered the tax loss separately in determining an alternative offense level for tax obstruction. PSR ¶67. This separate calculation resulted in a 2-level increase in the offense level as a "multiple count adjustment" under USSG 3D1.4.

into account losses caused by other co-defendants, which would make the loss more than $1 million, and with a 2-level increase in offense level would make the advisory guideline range 41-51 months.  The Government argues the defendant jointly undertook the criminal activity with these other individuals and that his sentence should include all foreseeable losses that were part of their jointly undertaken activity.   Additionally, the Government says the defendant was paid at least $115,000 for being a "consultant" to Kansas Athletics, with those payments authorized in part by co-defendant Kirtland, although the Government says the only apparent work Mr. Blubaugh did was to help his wife cover up the offense.  The Government also says it recently discovered the loss could be "several hundred thousand dollars" more, based on "deadwood" tickets kept by the Blubaughs in storage, which were recently turned over to the Government.

   The defendant contends the Government is relying on speculation about his consulting work, which he says was a legitimate part-time position, and about the evidentiary value of the deadwood tickets.  Defendant contends he was not in the ticket office on a daily basis and was unaware of what Jones, Kirtland, Liebsch, Simmons or Jeffries were doing.  He says he had nothing to do with ticket thefts by those individuals and did not assist them.  He argues that he is not responsible under the Guidelines for their conduct because he did not jointly undertake criminal activity with them, but only with his wife.

   Under the Guidelines, the offense level is determined from all "relevant conduct."  The latter includes all acts committed or aided and abetted in by the defendant and, in the case of jointly undertaken criminal activity, all reasonably foreseeable acts of others in furtherance of the jointly undertaken criminal activity, that occurred during the offense, in preparation for it, or in the course of attempting to avoid detection of it.  USSG 1B1.3. "In determining the scope of

the criminal activity that the particular defendant agreed to jointly undertake (i.e., the scope of the specific conduct and objectives embraced by the defendant's agreement), the court may consider any explicit agreement or implicit agreement fairly inferred from the conduct of the defendant and others." USSG 1B1.3, comment., n. 1.

The court concludes that the defendant jointly engaged in a scheme with several KAI employees to steal tickets, and that thefts by those other individuals – including Jones and Kirtland – were reasonably foreseeable to him. According to the Presentence Report, Jason Jeffries and others became concerned when the number of unused or "deadwood" tickets at the end of the season did not match computer records. *See* PSR ¶ 43. Part of Kassie Liebsch's job was to generate reports showing any such discrepancy, which she provided to Charlette Blubaugh. PSR ¶ 42. This discrepancy, had it been detected by University officials, could have alerted them that employees were diverting tickets. According to Jeffries, Charlette Blubaugh told him they would put the deadwood tickets in an area under construction and then say that the tickets had been lost in the construction. Jeffries said that Thomas Blubaugh, along with Charlette Blubaugh, Kirtland, and two other KAI employees, then loaded the deadwood tickets into a vehicle and took them. The tickets ended up in a private storage unit in Lenexa, Kansas, rented by the Blubaughs. The deadwood tickets have recently been turned over to the Government. Defendant has not denied these statements or actions, except to say that they are "misleading and incomplete." But any suggestion that moving the deadwood tickets to a private storage unit was not part of a concerted effort to conceal the defendants' theft of tickets defies both common sense and the clear import of such actions.

These circumstances show that the defendant joined with several other KAI employees to

3

help cover up the entire scheme. When considered in the light of the undisputed portions of the Presentence Report, it also strongly suggests, contrary to defendant's arguments, that the scheme to divert tickets was a joint one based on at least a tacit agreement or understanding among all of the participants, including the defendant. The defendant's wife was in the middle of the ticket diversion, manipulating the computer system to allow both Jones and Thomas Blubaugh to continue to obtain large numbers of tickets for sale. It is a reasonable inference, not speculation, to conclude that Thomas Blubaugh was well aware that Jones and Kirtland, like himself, were benefitting from unauthorized ticket sales made possible by Charlette Blubaugh's actions. The evidence as a whole, including the role played by the defendant and his wife, shows that the defendant joined with the other employees in what was essentially a single common scheme to divert and sell tickets, even if they sold tickets and split profits separately from each other. The circumstances show that the participants acted for their shared mutual benefit, with a tacit understanding that there were enough tickets for everyone.

After considering the circumstances as a whole, the court will sustain the Government's objection. The court finds that the loss from the offense is between $1 million and $2.5 million (USSG 2B1.1(b)), and that the adjusted offense level is 22, with a corrected guideline range of 41 to 51 months imprisonment.

*Section 3553(a) Factors*.

Defendant argues that the factors in Section 3553 warrant a sentence below the advisory guideline range. Defendant points out that he has various medical conditions, including Menier's disease (which affects his hearing and balance); back problems; sinus infections; high blood pressure; circulation problems; and diabetes. Defendant asks the court to also consider his

4

family situation, including the care he helps provide to his two minor children (ages 6 and 5), one of whom has developmental problems. He asks the court to grant a departure or, alternatively, to stay any sentence imposed on his wife, to allow her to take care of the children while he serves his sentence. Defendant further argues that he has fully cooperated with the Government. Based on all of the circumstances, the defendant argues that a sentence of 21 months is warranted under the factors in Section 3553.

The Government argues for a sentence of 46 months. It argues that a lesser sentence would create unwarranted disparities, pointing out that co-defendants Liebsch and Jones were given 37 and 46 months, respectively. The Government argues that Mr. Blubaugh's conduct mirrored that of his wife, and it says that her sentencing range will likely be higher.

Based on the factors in Section 3553, the court finds that a sentence of 46 months imprisonment is appropriate in this case. The court recognizes that the defendant has significant health problems. The Bureau of Prisons is equipped to provide medical care, and should be able to provide for his needs. The court cannot find that his condition warrants a lesser sentence. The court also recognizes that the sentence will cause the defendant's family to suffer, but that is true in almost every case that comes before the court. Other arrangements will have to be made for the care of the children.

The defendant was deeply involved in the scheme to steal tickets, which resulted in an illicit gain to him and his wife of almost a million dollars. He failed to pay over $200,000 in taxes on that income. Given the circumstances of the offense and the defendant's involvement, the sentence of 46 months is necessary to reflect the seriousness of the offense, to provide for just punishment, and to avoid unwarranted sentencing disparities with others convicted of similar

crimes.

*Conclusion*.

The Government's objection to the Presentence Report is SUSTAINED. The court finds the adjusted offense level is 22, with a resulting advisory guideline range of 41-51 months. The court further finds that a sentence of 46 months' imprisonment, together with the other terms and conditions stated at the sentencing hearing, is a sentence sufficient but not greater than necessary to meet the purposes of sentencing in 18 U.S.C. § 3553(a).

The Probation Officer in charge of this case shall see that a copy of this order is appended to any copy of the Presentence Report made available to the Bureau of Prisons. IT IS SO ORDERED this __12th__ Day of April, 2011, at Wichita, Ks.

                                       s/Wesley E. Brown
                                       Wesley E. Brown
                                       U.S. Senior District Judge