# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF KANSAS

```
UNITED STATES OF AMERICA,          )
                                   )
                    Plaintiff,     )      CIVIL ACTION
                                   )
v.                                 )      No.  10-10178-01-MLB
                                   )           12-1135-MLB
THOMAS RAY BLUBAUGH,               )
                                   )
                    Defendant.     )
_____)
```

## MEMORANDUM AND ORDER

This matter is before the court on the following:

> Defendant's Motion to Vacate under §2255 (Doc. 258); Government's Response (Doc. 264); Defendant's Amended Motion (Doc. 281); and

> Government's Motion to Enforce Plea Agreement (Doc. 282); and Defendant's Response (Doc. 283).

## I. Background

On November 17, 2010, a one-count indictment was filed charging defendant Thomas Ray Blubaugh and four others with a conspiracy in violation of 18 U.S.C. §§ 317 and 1349. (Doc. 1). The indictment alleged that these employees or associates of the athletic ticket office at the University of Kansas (KU) conspired to steal or obtain KU athletic tickets by fraud and to sell them for personal gain. The stolen tickets were allegedly moved and marketed in interstate commerce and sold in a manner designed to defraud the United States by obstructing the collection of income taxes. Stephen E. Robison, an attorney experienced in criminal defense matters, entered his appearance as defendant's retained counsel. (Doc. 6).

On January 28, 2011, defendant entered into a plea agreement

with the Government and pleaded guilty to the indictment. (Docs. 53, 54). The plea agreement contained several terms relevant to defendant's instant §2255 motion, including the following.

Section 5 of the agreement, entitled "Government's Agreements," stated in part that in exchange for defendant's plea of guilty as set forth the United States agrees:

> b. To file a motion pursuant to 5K1.1 of the guidelines reflecting the defendants substantial assistance in investigating and prosecuting his co-conspirators in this case.

The Government's obligation was said to be "contingent upon the defendant's continuing manifestation of acceptance of responsibility as determined by the United States." (Doc. 54 at 5).

Section 7, entitled "Substantial Assistance," provided in part:

> The defendant acknowledges that substantial assistance has not yet been provided by the defendant within the meaning of U.S.S.G. § 5K1.1 and Title 18, United States Code § 3553(e). The defendant also acknowledges and understands that the determination as to whether the defendant has provided substantial assistance and whether a motion pursuant to U.S.S.G. § 5K1.1 will be filed are left entirely and exclusively within the discretion of the United States. If a determination is made by the United States [that] the defendant has provided substantial assistance, the United States shall request that the Court consider reducing the sentence the defendant would otherwise receive under the applicable statutes and/or sentencing guideline pursuant to Title 18, U.S.C. § 3553(e), Title 28, U.S.C. § 994(n), and U.S.S.G. § 5K1.1.

(Doc. 54 at 7-8).

Section 9 of the agreement, entitled "Information Provided by Defendant," provided in part that new information the defendant provides about his own criminal conduct will not be used except as authorized by U.S.S.G. § 1B1.8.

-2-

Finally, Section 12 contained a "Waiver of Appeal and Collateral Attack," which provided in part:

> Defendant knowingly and voluntarily waives any right to appeal or collaterally attack any matter in connection with this prosecution, conviction and sentence. * * * [D]efendant knowingly waives any right to appeal a sentence imposed which is within the guideline range determined appropriate by the court. The defendant also waives any right to challenge a sentence or otherwise attempt to modify or change his sentence or manner in which it was determined in any collateral attack, including, but not limited to, a motion brought under Title 28, U.S.C. §2255 [except as limited by *United States v. Cockerham*, 237 F.3d 1179, 1187 (10th Cir. 2001)]....

(Doc. 54 at 9).

At a Rule 11 hearing on January 28, 2011, defendant was questioned by U.S. District Judge Wesley Brown about his understanding of a guilty plea and its consequences. (Doc. 263). The judge informed defendant of the nature of the charge, the potential penalties, and the rights that he would be giving up by pleading guilty. Mr. Robison summarized the terms of the plea agreement at the hearing, including a brief reference to its 5K1.1 provisions: "And the Government has agreed to accept his cooperation, hopefully leading to a 5K1 acceptance -- substantial assistance to the Government." (Doc. 263 at 16). The court reviewed with defendant the effect of his waiver of appeal and collateral attack. At the conclusion of the hearing the court accepted defendant's plea of guilty as having been knowingly and voluntarily made. (Doc. 53).

At sentencing on April 13, 2011, Judge Brown sustained a Government objection to the amount of loss for which defendant was responsible. (Doc. 99 at 4). The PSR initially determined defendant

was responsible only for ticket sales directly benefitting he and his wife, calculated to be $841,111. The judge found defendant was additionally responsible for ticket sales by other conspirators, which made the total loss more than $1 million and increased the offense level by 2. As a result, the judge found the applicable guideline range for imprisonment to be 41-51 months instead of the 33-41 month range in the PSR. Defendant was sentenced to 46 months' imprisonment. (Doc. 132). No direct appeal was taken.

## II. Defendant's §2255 Motion and Hearings

Defendant filed a timely motion to vacate or modify sentence under 28 U.S.C. § 2255. (Doc. 258). After reviewing the motion and the Government's response, the court set an evidentiary hearing and appointed attorney James Pratt to represent defendant. Mr. Pratt subsequently filed a motion to amend the §2255 motion, which the court granted. (Docs. 281, 295).

An initial evidentiary hearing was held on January 16, 2013. (Doc. 320). The only witness at that hearing was the defendant. Because defendant claimed that Steve Robison had rendered ineffective assistance of counsel, but neither side called Robison to testify, the court scheduled another evidentiary hearing to allow Robison to respond to the allegations. Robison testified at this second hearing on March 14, 2013. (Doc. 336).

At the latter hearing defendant narrowed the scope of his §2255 claims.[1] He now asserts the following claims: (1) the sentencing court

---

[1] At the March 14, 2013 hearing defendant specifically waived the following claims (the issue numbers correspond to the numbers in defendant's motion to amend (Doc. 281 at Pp. 2-3)):
Issue 4(b) - that the sentencing court violated the objective of

allowed the government to use additional information received after the plea agreement, i.e., information regarding "deadwood" tickets, to adjust the loss amount upwards; (2) defendant's plea was not knowing and voluntary because trial counsel assured him that his proffer session with the Government was sufficient to support a §5K1.1 motion; and (3) the government breached the plea agreement by failing to file a §5K1.1 motion and counsel was ineffective for failing to raise this breach at the time of sentencing.

**III Discussion**

Claim 1 – <u>Use of "deadwood" ticket information at sentencing</u>. Defendant complains that information he provided to the Government during a proffer session[2] was improperly used against him by the

avoiding sentencing disparities by allowing an upward departure in defendant's sentence;

Issue 4(c) – that trial counsel was ineffective by: (i) failing to argue against the use of "deadwood" ticket information and the foregoing sentence disparity; (ii) failing to provide a letter from the Government stating that the deadwood tickets had no evidentiary value; and (iii) failing to argue that only the loss directly attributable to defendant should be used to calculate his sentence;

Issue 4(d) – defendant's plea was not knowing and voluntary because trial counsel assured him the Government would not oppose a probation recommendation for any defendant that signed a plea agreement. <u>See</u> Doc. 336 at 20-22.

[2] According to the testimony, defendant contacted Steve Robison several months before the indictment was filed. They initially adopted a "lay low" strategy, but when investigators contacted an individual to whom defendant had sold KU tickets, defendant and Robison, along with defendant's wife and her attorney, contacted the prosecutor and offered information in the hopes of avoiding criminal charges. They met with the prosecutor in October 2010 and the Blubaughs gave statements. The evidence indicates this was done under a promise by the Government to refrain from using defendant's statements against him as long as he told the truth.

Robison testified his impression at the proffer was that the agents were "sort of underwhelmed." He believed the agents thought defendant was understating his involvement. Robison was shocked at the proffer session when the Government produced documentation indicating

Government and the sentencing court. Defendant argues this was prohibited by the plea agreement and by U.S.S.G. § 1B1.8.

The issue involves so-called "deadwood" tickets – that is, unsold tickets left in KU's possession after athletic events had taken place. In his October 2010 proffer, defendant disclosed that he had moved deadwood tickets to his private storage unit in Lenexa, Kansas. Nothing further was said about the deadwood tickets at that time. Later, as defendant's sentencing approached, the Government wanted to see the deadwood tickets, and defendant met with agents and allowed them access to the tickets. The deadwood tickets were later mentioned in the parties' sentencing briefs and in the judge's ruling at sentencing.

Any claim of error from use of defendant's proffer information is procedurally barred because defendant did not raise this issue before the sentencing court or on direct appeal. "A §2255 motion is not intended as a substitute for an appeal." United States v. Cervini, 379 F.3d 987, 990 (10th Cir. 2004) (citing United States v. Frady, 456 U.S. 152, 164-65 (1982)); United States v. Allen, 16 F.3d 377, 378 (10th Cir. 1994) ("[§] 2255 is not available to test the legality of matters which should have been raised on direct appeal"). "Consequently 'failure to raise an issue either at trial or on direct

---

the Blubaughs had sold over $800,000 worth of tickets, because defendant had estimated the amount at no more than $200,000-$300,000. (Doc. 336 at 54-55). Robison later communicated to defendant that "we didn't do as well as I hoped we could" at the proffer, although they were hopeful of having another meeting. (Doc. 336 at 70). Defendant and his wife were subsequently indicted on November 17, 2010. This was apparently the only proffer session between the parties, although defendant offered to meet again and there were some subsequent contacts between the parties. (See Doc. 95 at 2).

appeal imposes a procedural bar to habeas review.'" <u>Cervini</u>, 379 F.3d at 990.[3] A defendant can overcome this procedural bar if he can show both good cause for failing to raise the issue earlier and that a failure to consider the claim would result in actual prejudice to his defense. Another exception lies for defects resulting in a complete miscarriage of justice. <u>See</u> <u>Frady</u>, 456 U.S. at 167-68.

Defendant has met neither exception. He specifically waived any claim that his counsel was ineffective for failing to assert this alleged breach of the plea agreement, and he cites no other justification for failing to raise it previously. <u>Cf</u>. <u>United States v. Harms</u>, 371 F.3d 1208, 1211 (10th Cir. 2004) ("A meritorious claim of ineffective assistance of counsel constitutes cause and prejudice for purposes of surmounting the procedural bar."); <u>United States v. Walling</u>, 982 F.2d 447 (10th Cir. 1992) (failure to raise breach of plea agreement claim on direct appeal must rise to the level of ineffective assistance of counsel to satisfy cause and prejudice standard). Nor does defendant cite any evidence of prejudice or of a complete miscarriage of justice. <u>See</u> <u>United States v. Snider</u>, 2012 WL 5974238, *3 (unpublished) (10th Cir., Nov. 30, 2012) (claim that Government breached plea agreement by failing to support adjustment for acceptance of responsibility was procedurally barred by failure to raise it on direct appeal).

A review of the record confirms the lack of prejudice or a

---

[3] Although defendant executed an appellate waiver as part of his plea agreement, such a waiver is unenforceable if the Government breaches its obligations under a plea agreement. <u>United States v. Rodriguez-Rivera</u>, 518 F.3d 1208, 1212 (10th Cir. 2008). A meritorious claim for breach of the plea agreement therefore could have been raised on direct appeal.

"complete miscarriage of justice." Neither the plea agreement nor U.S.S.G. §1B1.8 prohibited the use of information known to the Government independently of the parties' cooperation agreement. The record shows there was an abundance of such evidence before the sentencing court.

Prior to defendant's proffer, the Government had information that defendant was involved with others in an attempt to hide deadwood tickets from university officials. A KU investigation completed in the first part of 2010 indicated as much and reported that the deadwood tickets were missing and presumably had been destroyed. (Doc. 282-2 at 19[4]). Moreover, defendant's PSR included information from Jason Jeffries, who previously pled guilty to a related offense. According to Jeffries, defendant's wife disclosed a plan to hide the deadwood tickets from the university and to claim the tickets had been destroyed by construction work at the football stadium. (Doc. 90 at ¶¶42-44). The PSR indicated this was an attempt to keep the conspirators' ticket thefts from being discovered by preventing any audit of the deadwood tickets. It noted the conspirators were concerned because the number of deadwood tickets on hand did not match the number a computer tracking system indicated should be left. Jeffries reported that defendant, defendant's wife, co-defendant

---

[4]    The KU report stated: "The investigation revealed that [Charlette] Blubaugh told Simmons and Jeffries that certain records necessary for yearly clean up for the 2008-2009 basketball ticket sale could not be reconciled and that they should be moved to the football stadium. She said that she, Kirtland and Tom Blubaugh would destroy them on a weekend and when the records could not be found, blame it on construction at the stadium. The records are missing."

Kirtland and two KAI[5] assistants thereafter loaded the deadwood tickets into a vehicle, although Jeffries did not know what they did with them. In keeping with the plan, defendant's wife subsequently told investigators that the missing deadwood tickets had been destroyed by water damage during construction.

The only additional fact apparently gleaned from defendant's proffer was that the deadwood tickets had been moved to the Blubaughs' private storage unit. The record indicates this was actually first disclosed to the court in defendant's sentencing memorandum, and was then discussed in the Government's memorandum and defendant's response in the PSR, all without objection or limitation, before Judge Brown noted it at sentencing.[6] (Doc. 262 at 7, 12; Doc. 99 at 3-4).

The fact that defendant first disclosed the proffer information to bolster his own sentencing arguments likely precludes any claim that its subsequent use or consideration violated his rights. But even if not, the record indicates any error was harmless. Jeffries' information and the KU report provided independent grounds for the sentencing court's conclusion that "defendant joined with several other KAI employees to help cover up the entire scheme." (Doc. 99 at 3-4). And defendant's participation in that concerted action persuaded the court "that the scheme to divert [athletic] tickets was a joint

---

[5] Kansas Athletics, Inc., a non-profit corporation that promotes KU athletics. Def. Exh. 2 at 2.

[6] Defendant's sentencing memorandum disclosed this information in an attempt to impress the sentencing court with the extent of defendant's cooperation. (Doc. 88 at 6, 11). It was certainly a reasonable strategic decision by counsel to use the information in this manner, given the other information suggesting defendant and others had destroyed the deadwood tickets.

one based on at least a tacit agreement or understanding among all of the participants, including the defendant." Given the available information about defendant's participation in a joint scheme to hide the deadwood, disclosure of the additional fact that the tickets were moved to his storage unit could not have materially affected the sentencing court's finding that he was jointly responsible for ticket sales. See <u>United States v. Bennett</u>, 708 F.3d 879, 886-87 (7th Cir. 2013) (any reliance on proffer information was harmless in view of substantial other information supporting the court's finding). Defendant's first claim is therefore procedurally barred.

Claim 2- <u>Defendant's plea was not knowing and voluntary because trial counsel assured him that his proffer session with the Government was sufficient to support a §5K1.1 motion.</u>

This is essentially a claim of ineffective assistance of counsel relating to the validity of defendant's plea of guilty. As such, it is not precluded by the waiver provision in defendant's plea agreement. See <u>United States v. Cockerham</u>, 237 F.3d 1179, 1187 (10th Cir. 2001) ("a plea agreement waiver of postconviction rights does not waive the right to bring a §2255 petition based on ineffective assistance of counsel claims challenging the validity of the plea or the waiver."); <u>United States v. Villareal</u>, 351 Fed.Appx. 332, 337, 2009 WL 3526561 (10th Cir. 2009) ("if counsel's misrepresentations about the likelihood of a downward departure led him to plead guilty under the erroneous belief that he would receive a lighter sentence, then his ineffective assistance claim would directly challenge the validity of the plea itself."). Nor does the failure to file a direct appeal alleging ineffective assistance procedurally bar the claim.

<u>Massaro v. United States</u>, 538 U.S. 500, 509 (2003).

To state a claim for violation of the Sixth Amendment right to the effective assistance of counsel, a petitioner must show: 1) that counsel's representation was deficient; and 2) the deficient representation caused prejudice to petitioner. <u>Strickland v. Washington</u>, 466 U.S. 668, 687 (1984). To prove deficient performance, defendant "must show that his attorney['s] representation fell below an objective standard of reasonableness." <u>Romano v. Gibson</u>, 278 F.3d 1145, 1151 (10th Cir. 2002) (quoting <u>Strickland</u>, 466 U.S. at 687–88). To prove prejudice, petitioner must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." In the context of a claim that a plea of guilty was induced by erroneous advice from counsel, defendant must show there is a "reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." <u>United States v. Salazar</u>, 323 F.3d 852, 857 (10th Cir. 2003) (<u>quoting</u> <u>Hill v. Lockhart</u>, 474 U.S. 52, 59 (1985)).

Defendant has failed to satisfy either part of <u>Strickland</u>. As to the first part, the evidence fails to support a finding that his attorney advised him he was assured of receiving a 5K1.1 motion. The court finds Robison's testimony credible that he advised defendant in connection with the plea that although a 5K1.1 motion was a good possibility, it was ultimately up to the prosecutor to decide whether or not to file such a motion. (<u>See</u> <u>e.g.</u>, Doc. 336 at 29-30, 33, 44, 71, 75, 81). This is consistent with Robison's advice to defendant that Section 7 of the plea agreement - which said substantial

assistance had not yet been provided and the Government retained sole discretion to determine whether a 5K1 motion will be filed - was "controlling" to the extent it conflicted with the promise in Paragraph 5 to file a 5K1 motion reflecting defendant's substantial assistance. (Doc. 336 at 30, 44).

Defendant's claim appears to spring largely from correspondence, including an email from Robison to defendant on January 3, 2011, several weeks before the plea. (Def. Exh. 3). This message included the following somewhat ambiguous account of a conversation between the Blubaughs' lawyers (Robison and Rapp) and the prosecutor (Hathaway). According to the email, Hathaway indicated in response to defense inquiries that he "remains interested" in a 5K1 motion.[7] The Blubaughs' lawyers expressed concern that only one of the co-defendants (Kirtland) might end up going to trial, and they thought he would eventually plead guilty (thereby reducing the Blubaughs' chances of earning a 5K1). The email reported that Hathaway said he thought Kirtland would go to trial and that "your proffer made in Topeka will be the basis of the 5K1." When the lawyers asked what would happen if Kirtland pleads guilty, Hathaway allegedly said "he considers your proffer in Topeka to be something that would have led

---

[7] As indicated previously, the Blubaughs had a pre-indictment proffer session. Subsequent to the filing of the indictment, on November 22, 2010, Hathaway emailed Robison and Rapp that the Government is "prepared to offer the Blubaughs a plea agreement in which they can earn a 5K for their assistance in bringing others to justice. If that is of any interest to your clients please let us know." (Def. Exh. 1 at 5-6). After checking with his client, Robison emailed back the same day that "Tom Blubaugh wants to pursue the 5K route. I presume we will need to meet with you and the agents again." In an email to Rapp later the same day (which was forwarded to defendant), Robison commented "I am concerned ... that we can earn a 5K1...." (Def. Exh. 1 at 2).

to the plea, so he can consider your work to date for a 5K1," although he "has to stay hypothetical and can't put it into the plea agreement."[8]

Whatever uncertainty this or other emails might have caused in defendant's mind, the preponderance of evidence shows that by the time of the plea Robison had advised defendant that a 5K1 motion was not assured and it was up to the Government to decide if one would be filed. Defendant's contrary assertion -- i.e., that Robison assured him a 5K1 would be filed and that he dismissed Section 7 of the agreement as "fine print language" -- is not a reliable recollection of events. In fact, defendant testified he does not recall whether Robison told him the Government was not obligated to file a 5K1 and conceded that he might have. (Doc. 320 at 27-28). Robison's testimony persuades the court that he did so inform defendant prior to the plea and that defendant likely understood this to be the case when he pled guilty. (See Robison testimony, Doc. 336 at 30) ("I saw what it appeared to be; but I read Paragraph 7 as being the controlling paragraph because it said it's up to the Government to file it. I thought it was poorly worded, but I told my client, Paragraph 7 controls.").

The evidence on the foregoing point is not totally one-sided. For example, a December 30, 2010 memo from Robison to defendant indicated that Hathaway "has agreed to file the motion but he has said

---

[8] Robison testified he should have used the term "conditional" instead of "hypothetical." He clarified that Hathaway said "we might consider [defendant's proffer] to be sufficient in itself" if the co-defendants decide to plead guilty, but Hathaway "was not promising a 5(k)." (Doc. 336 at 33).

you have not provided such assistance yet." (Doc. 336 at 62-63).
Robison concedes that his memo indicated the Government had to file
a 5K1 motion, even if defendant would get nothing out of it. (Doc. 336
at 63). Robison testified that he "probably said something like it's
an unusual way to say it, he [Hathaway] said he'd file one but it
doesn't say that you'll get anything for it. We want you to get
something for it." And as noted _infra_, the evidence shows that Robison
and defendant had a later discussion about contesting the Government's
failure to file a 5K1, either just before or just after sentencing (or
perhaps at both times).[9]

Defendant obviously hoped for and probably expected to receive
a 5K1 motion in exchange for his cooperation and plea of guilty. But
the evidence indicates Robison informed him before entry of the plea
that such a motion was not guaranteed. This conclusion is not only
supported by credible testimony, it is also consistent with Robison's
comment at the Rule 11 hearing that defendant's cooperation would
"hopefully" lead to a 5K1. As an intelligent and educated adult,
defendant would surely know what "hopefully" meant, just as he must
have understood Robison's explanation to him that a 5K1 was not
guaranteed. In sum, defendant has failed to show that his plea was
based on an erroneous assurance from his attorney that he would
receive a 5K1 motion.

At any rate, and regardless of these evidentiary conflicts about
what 5K1 advice was given and when, defendant's second claim clearly

---

[9] The testimony lacked clarity at times with respect to the
timing and sequence of events. This is not surprising given the
passage of time, and the court attributes it to a simple failure of
recollection by the witnesses, not to any purposeful evasion.

fails to meet the prejudice requirement of <u>Strickland</u>. "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." <u>Strickland</u>, 466 U.S. at 691. When a claim is made that a defendant was induced to plead guilty because of counsel's erroneous advice, the defendant must show "that there is a reasonable probability that, but for counsel's errors, he would not have pled guilty and would have insisted on going to trial." <u>Hill v. Lockhart</u>, 474 U.S. 52, 59 (1985). The evidence here not only fails to support such a finding, it all points to the contrary.

Nowhere in defendant's §2255 motion or testimony has he claimed he would have pleaded not guilty and would have gone to trial but for the alleged assurance of Robinson that the proffer was sufficient for a 5K1. This failure alone precludes relief on his claim under the rule of <u>Hill v. Lockhart</u>.[10] In fact, defendant forthrightly testified that it was his desire from the beginning of the criminal case to accept full responsibility and to enter a plea agreement rather than go to trial. (Doc. 320 at 9). The evidence shows he was intent on pleading guilty and in all likelihood would have done so without any alleged assurance of a 5K1 motion. His testimony and representations before the court make clear that even now he does not want to withdraw his

---

[10] The Supreme Court has recently recognized that in the context of a claim of attorney error in plea negotiations, the test for prejudice is whether a defendant can show "a reasonable probability that the end result of the criminal process would have been more favorable" to defendant in the absence of the deficiency. In doing so, the Court reaffirmed's <u>Hill's</u> application to a claim that counsel's erroneous advice led defendant to accept a plea offer rather than go to trial. <u>See</u> <u>United States v. Moya</u>, 676 F.3d 1211, 1214 (10th Cir. 2012) (discussing cases).

plea of guilty – even if the court finds withdrawal of the guilty plea to be the only remedy for his claim. (Doc. 320 at 5, 8-9; Doc. 336 at 86). In sum, defendant has failed to show that any prejudice resulted from his counsel's allegedly erroneous advice.

Claim 3 – <u>The government breached the plea agreement by failing to file a §5K1.1 motion and counsel was ineffective for failing to raise this breach at the time of sentencing.</u>

A plea agreement waiver of post-conviction rights does not waive the right to bring a §2255 claim "based on ineffective assistance of counsel claims challenging the validity of the plea or the waiver." <u>United States v. Cockerham</u>, 237 F.3d 1179, 1187 (10th Cir. 2001). Although defendant's third claim does not expressly attack the validity of his plea, under a liberal construction it might be viewed as doing so because its underlying premise is that he entered the plea based upon a Government promise to file a 5K1 motion. <u>See</u> <u>United States v. Gomez-Astorga</u>, 317 Fed.Appx. 734, 738-39 (10th Cir. 2008)(claim that counsel was ineffective at sentencing for failing to argue that Government breached plea agreement challenged the validity of the plea).

Whether defendant procedurally defaulted this claim by failing to raise it on direct appeal turns upon whether he has a meritorious claim for ineffective assistance of counsel.[11] <u>See</u> <u>e.g.</u>, <u>United States</u>

_____

[11] Absent the allegation of ineffective assistance, a free-standing claim that the Government so breached the plea agreement would be procedurally barred unless defendant could show cause and prejudice for failing to raise it on direct appeal. Aside from the allegation of ineffective assistance, nothing is cited that could satisfy the cause and prejudice requirements. <u>Cf</u>. <u>United States v. Khan</u>, 835 F.2d 749, 754 (10th Cir. 1987) ("If the Government erred in failing to recommend affirmatively the proper sentence, the time to

v. Harms, 371 F.3d 1208, 1212 (10th Cir. 2004). To address that question, the court must first examine the merits of the underlying claim that the Government breached the agreement by not filing a 5K1 motion.

General principles of contract law define the Government's obligations under a plea agreement. United States v. Guzman, 318 F.3d 1191, 1195 (10th Cit. 2003). The court examines the express language in the agreement to identify the nature of the Government's promise and the defendant's reasonable understanding of the promise at the time of the plea. United States v. Walters, 2012 WL 3090911, *4 (July 31, 2012); Guzman, 318 F.3d at 1195-96. "Where the Government obtains a guilty plea which is predicated in any significant degree on a promise or agreement with the U.S. Attorney, such promise must be fulfilled to maintain the integrity of the plea." United States v. Bullcoming, 579 F.3d 1200, 1205 (10th Cir. 2009) (citations omitted). Significantly, "we construe any ambiguities against the government, as the drafting party,..." Walters, supra; United States v. VanDam, 493 F.3d 1194, 1199 (10th Cir. 2007).

In the negotiation of this plea agreement, counsel for the parties, particularly in view of their extensive experience in federal criminal cases, were undoubtedly aware of the legal backdrop of motions under §5K1.1 and 18 U.S.C. § 3553(e). These provisions give the Government a power, but not a duty, to file a motion asking for a reduction in sentence when a defendant substantially assists the Government in its investigation or prosecution of others. Wade v.

object was at the sentencing hearing or on direct appeal.").

*United States*, 504 U.S. 181 (1992). Ordinarily the Government's discretionary refusal to file a §5K1.1 motion can only be reviewed by a court if the refusal was prompted by an unconstitutional motive or was not rationally related to a legitimate government end, things the defendant does not argue here. But the Government can bargain away its discretion in a plea agreement and can obligate itself to file such a motion. See *Wade*, 504 U.S. at 185; *United States v. Courtois*, 131 F.3d 937, 938-39 (10th Cir. 1997).

A number of cases find the Government has not obligated itself to file a motion where the agreement states that the determination of whether substantial assistance has been provided and whether a 5K1 motion will be filed are left to the discretion of the United States. See *e.g.*, *United States v. Villareal*, 351 Fed.Appx. 332, 2009 WL 3526561, *4 (10th Cir. 2009). This holds true even if the provision includes some mandatory language stating the Government "shall file" or "will file" the motion because the promise in such cases "is ... clearly made contingent '[u]pon the determination of the United States' that [defendant] provided substantial assistance." *Villareal*, 351 Fed.Appx. at 336-37 ("while the plea agreement imposes a mandatory obligation on the government to request a downward departure, the request is only mandatory if the government, in its discretion, determines that [defendant] did in fact provide substantial assistance."). See also *United States v. Dominguez Beltran*, 184 Fed.Appx. 799, 2006 WL 1689269 (10th Cir. 2006) (promise to file motion "if the United States determines" there has been substantial assistance is not an unqualified promise to file a motion).

The contingent nature of the promise in this agreement is

certainly not as obvious as the one in <u>Villareal</u>. Section 5b standing alone sets forth a promise to "to file a motion pursuant to 5K1.1 of the guidelines reflecting the defendant['] substantial assistance...." Aside from one express condition requiring defendant to continue accepting responsibility,[12] the promise in Section 5b includes no other conditional language. By itself it could reasonably be construed to mean the Government has already determined that defendant provided substantial assistance and the Government has therefore obligated itself to file a 5K1 motion. The question here is whether it can reasonably be construed that way in view of the remaining terms of the agreement, including Section 7.

Section 7 specifically addresses the determination of "substantial assistance." It states with unmistakable clarity that defendant "acknowledges that substantial assistance has not yet been provided by the defendant within the meaning of U.S.S.G. § 5K1.1." It states clearly that "whether a motion ... will be filed" is left entirely within the discretion of the United States, as is the determination of whether the defendant has provided substantial

_____

[12] Section 5 expressly made the Government's obligation to file a 5K1 "contingent upon the defendant's continuing manifestation of acceptance of responsibility as determined by the United States." Defendant suggests this contingency was necessarily satisfied because the Government did not challenge defendant's acceptance of responsibility at sentencing. But there was no discussion or challenge at sentencing to the Government's refusal to file a 5K1 motion. The matter of the contingency was therefore not addressed. The most that can be said is that to date the Government has not asserted a failure to satisfy this contingency. <u>Cf</u>. <u>United States v. Garrod</u>, 388 Fed.Appx. 762, 2010 WL 2812831 (10th Cir. 2010) (no breach from Government's refusal to request a reduction for acceptance of responsibility because the obligation to make such a request was expressly conditioned on the Government's determination that defendant continued to accept responsibility).

-19-

assistance. And it further indicates the Government's obligation is yet conditional: "If a determination is made by the United States the defendant has provided substantial assistance, the United States shall request...."

These clear and conditional statements in Section 7 can signify only one of two things: either they were intended to apply to and limit the Government's obligation in Section 5 to file a 5K1 motion "reflecting the defendants substantial assistance," or they contradict and irreconcilably conflict with the obligation in Section 5. The court concludes that the latter construction of the agreement is unreasonable. Under general contract principles applicable to plea agreements, the contract "must be construed as a whole and the intention of the parties is to be collected from the entire instrument and not from detached portions." United States v. Hamdi, 432 F.3d 115, 125 (2nd Cir. 2005) (citing 11 Williston on Contracts §32:11). See also United States v. Schilling, 142 F.3d 388, 395 (7th Cir. 1998) ("A plea agreement, like any contract, should be construed as a whole, so that various provisions of the contract are harmonized and none are rendered meaningless.") (citation omitted); United States v. Gonzales-Garcia, 85 Fed.Appx. 160, 2004 WL 33633, *4 (10th Cir. 2004) (effect must be given to every provision of an agreement, and it must be construed as a whole).

Giving effect to the language in both Sections 5 and 7 compels a conclusion that the parties agreed defendant had not yet provided substantial assistance as of the signing of the plea agreement, and that any obligation on the Government's part to file a 5K1 motion was still contingent upon a future determination by the Government that

defendant's assistance was substantial. Like <u>Gonzalez-Garcia</u>, "[a]ny arguable ambiguity as a result of this language" in Section 5 "is resolved by the remainder of the agreement." The court therefore does not apply the rule that ambiguities in a plea agreement must be construed against the Government as the drafter of the agreement. <u>Gonzalez-Garcia</u> at *4. Defendant's asserted belief that the Government was necessarily promising to file a 5K1 motion was not a reasonable understanding of the terms of the parties' written agreement.

In fact the credible evidence shows Robison explained to defendant that the agreement would be construed precisely this way, with Section 7 "controlling." In light of the clearly conditional language in Section 7, as well as Robison's advice to defendant that the Government did not have to file a 5K1 motion and his statement at the Rule 11 hearing that they would "hopefully" get a 5K1, defendant could not have reasonably understood the terms of the plea agreement to guarantee him a 5K1 motion.

That is not to say this plea agreement was a model of clarity or draftsmanship. It would seem a rather simple matter to incorporate conditional language into any part of a plea agreement discussing a 5K1 motion so that any possible argument about the conditional nature of the promise is eliminated. For unexplained reasons that was not done here, with the result being a significant waste of time, effort and expense by all concerned.

Nevertheless, under these circumstances no showing has been made that the Government breached the plea agreement. The terms of the agreement did not obligate the Government to file a 5K1 motion unless and until it determined that defendant provided substantial

assistance. No showing is made that the Government actually made such a determination, or that its refusal to find substantial assistance was based upon an unconstitutional motive or irrational basis. Given that the Government did not breach the plea agreement, defendant cannot show that his counsel's failure to argue a breach at sentencing fell below an objective standard of reasonableness or that it caused him prejudice. Accordingly, defendant's third claim provides no grounds for relief.

The failure of this claim on its underlying merits arguably eliminates any need to examine further the allegation of ineffective assistance of counsel. But because the evidence shows that a strategic choice was made to avoid raising the 5K1 issue at sentencing and on direct appeal, the court will address it.

The evidence shows Robison advised defendant that even if they could get a court to order an unwilling prosecutor to file a 5K1 motion, it would not be worth it to do so. Robison's view was that forcing a motion "with no accommodation" from the prosecutor would be a triumph of "form over substance" and would be unlikely to produce any sentencing benefit. (Doc. 336 at 44). He advised defendant they were better off relying on their other sentencing arguments, including pointing out defendant's efforts and willingness to cooperate. (Doc. 336 at 26-30). Moreover, Robison discussed with defendant the fact that an attempt to force a 5K1 or to take an appeal could anger the prosecutor and could provoke an attempt by him to revoke the plea agreement. That was a concern because the prosecutor had already stated he was "struggling with [defendant's] acceptance of responsibility" due to what the prosecutor viewed as defendant's

understatement of his responsibility for ticket sales and the lack of any legitimate reason for possessing the deadwood tickets. (Doc. 336 at 59-60; Def. Exh. 4). Defendant's testimony shows he was ardently opposed to doing anything that might result in the plea agreement being set aside. He therefore acceded to Robison's view that they should not complain about the lack of a 5K1 at sentencing and should not attempt to appeal the issue. (Doc. 320 at 33-34; Doc. 336 at 27-28).

Under <u>Strickland</u> there is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance" and that the challenged action "might be considered sound trial strategy." 466 U.S. at 689. No showing has been made that counsel's advice at sentencing was unreasonable. First of all, there was clearly some factual support for counsel's concern that they might provoke a Government attempt to challenge defendant's acceptance of responsibility or his compliance with the plea agreement. The prosecutor was already making rumblings about defendant's failure to accept full responsibility for ticket sales and questioning his account of deadwood tickets. Against these concerns, counsel had to weigh the potential benefits of seeking to force the Government to file a 5K1 motion. Although case law makes specific performance of a plea agreement a potential remedy for a Government breach (<u>see</u> <u>Santobello v. New York</u>, 404 U.S. 257 (1971)), as counsel pointed out such a remedy would be unlikely to produce any real benefit if the Government believed defendant's assistance was insubstantial. Again, the evidence shows this was a legitimate concern. Most of the information provided in the proffer session had come from defendant's

wife, to the point where Robison was concerned whether the Government would even consider defendant for a 5K1. And under the sentencing guidelines, the sentencing court would have been obligated to give substantial weight to the Government's assessment of the extent of defendant's assistance. U.S.S.G. §5K1.1, application note 3. Moreover, if this claim had been raised before the sentencing court, the court may well concluded that the appropriate remedy was to give defendant the opportunity to withdraw his plea of guilty, something defendant was not interested in doing.

After a strategic choice has proved less successful than was hoped for, "[i]t is all too tempting for a defendant to second-guess counsel's assistance ... and it is all too easy for a court ... to conclude that a particular act or omission of counsel was unreasonable." Strickland, 466 U.S. at 689. But "[a] fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Under the circumstances, counsel made an assessment of the potential risks and benefits and advised defendant on a course that was designed to offer the best chance of a successful outcome. That advice was supported by sound considerations and was well within the bounds of reasonable professional assistance. The fact that the sentencing court ultimately saw matters differently and imposed a sentence greater than defendant hoped for does not mean that counsel's advice was unreasonable. Defendant received the effective assistance of counsel guaranteed by the Sixth Amendment.

**IV Conclusion**

Defendant's Motion under §2255 to Vacate Sentence (Docs. 258, 281) is DENIED.

The Government's Motion to Enforce Plea Agreement (Doc. 282) is DENIED.

The court thanks Mr. Pratt for his representation of defendant in connection with the § 2255 hearing. His services are concluded with entry of this order, and he is directed to submit the appropriate voucher for reimbursement of his services.

IT IS SO ORDERED.

Dated this   12th   day of April 2013, at Wichita, Kansas.


s/Monti Belot
Monti L. Belot
UNITED STATES DISTRICT JUDGE